## IRA C. JOHNS v. STATE OF FLORIDA

24 So. (2nd) 708                                     January Term, 1946
February 1, 1946                                              Division B

*C. J. Hardee,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *J. Rex Farrior,* State Attorney for the Thirteenth Judicial Circuit of Florida, for appellee.

THOMAS, J.:

The first reason urged by the appellant for reversal of the adjudication of his guilt of murder in the second degree, upon an indictment charging him with having committed murder in the first degree, is the impropriety of the trial judge's order denying a motion for continuance. In substance, it was set out in the motion that the appellant could not have stabbed

the deceased, who was fatally wounded as he sat in an automobile near a restaurant, because the accused was at the time inside the building, about one hundred feet away, conversing with a waiter, Al Rodriguez. The continuance was sought on the ground that Rodriguez was unavailable as a witness at the trial due to his services in the armed forces beyond the territorial limits of the United States. The applicant represented that if called to the stand this prospective witness would establish an alibi.

The part of the motion relating to the "facts showing when and how the applicant learned that the witness would testify as alleged in the motion," an ingredient made essential by Section 916.05 (10) Florida Statutes, 1941, and F.S.A., was fatally defective as will readily be seen. The movant averred that the information "as to what said witness . . . will testify to was received by this defendant in person by him having been present at said time and place and knowing that said Al Rodriguez saw him and *would have to testify to the truth as set forth herein."* (Italics supplied). It seems to us that a comparison of the statutory requirements with the applicant's allegations, both of which we have just quoted, shows a patent inconsistency between the two.

It was applicant's burden to set out facts giving the manner of his learning what the prospective witness would testify were he available. The purpose of this requirement is to apprise the trial judge about the reliability of the information, the probability of the witness' so testifying if introduced and the effect upon defendant's case if the cause proceeded to trial without the witness. The defendant's method of meeting the prerequisite was decidedly insufficient. His allegations showed no intelligence whatever coming from Rodriguez, directly or indirectly, as to what he would say on the witness stand. The defendant merely assumed the position that he, himself, was, at the moment the fatal blow was struck, talking to Rodriguez, that his own statement as to his whereabouts could not be gainsaid and upon that premise he based the assertion that if Rodriguez testified otherwise he would prevaricate, hence could do not other than prove the alibi. But for aught the Court knew Rodriguez would not remember the occasion;

would not state the conversation was held at the precise time the offense was committed; would give statements contradicting the appellant's. The trial judge whose obligation it was to scrutinize the motion could not properly delay the trial simply because the defendant represented to him, in effect, that if the witness did not corroborate the defendant's claim of being some where else when the crime was committed, the witness would not be telling the truth. From our analysis and study of the motion the trial judge was eminently correct when he denied it.

This brings us to the question relating to the sufficiency of the evidence from a perusal of which we find an added reason to approve the ruling on the motion for continuance for, as we said in Dupree v. The State, 125 Fla. 58, 169 So. 600, even if the trial judge erred his mistake would have been harmless, the guilt of the accused having been proved beyond a reasonable doubt.

There was abundant evidence that the defendant was in the immediate vicinity at all times relevant to the fatal assault. There was an atmosphere of belligerence about the place and at least one fight had developed, a fight between appellant's victim and a man named Earl Thompson, resulting in the latter receiving a knife wound on the arm. Williams' companions escorted him to a car and the three left the scene. They had proceeded only a few yards when Williams announced that he had been cut in the neck and asked that he be taken to a hospital.

Meanwhile, for reasons not entirely clear, the defendant, no party to the fight between Williams and Thompson, evidently undertook to wreak revenge on Williams just before the car departed; then he announced to Thompson that he had cut Thompson's assailant (Williams) worse than Williams had cut Thompson. The nature of the wound—a large artery in the neck was severed—; the infliction of it by the defendant when he had had no difficulty whatever with Williams, in so far as we know and had no reason to take the part of Thompson; and the boast of the defendant immediately afterward; all tend to establish the depravity of mind defined in the statutes denouncing murder in the second degree.

It is true there was some contradiction between witnesses for the State and defendant and there were some inconsistencies in the testimony of the State's witnesses, but there was ample testimony, if believed by the jury, to warrant their verdict of murder in the second degree. We have given only the briefest resume of the essential facts taken from a record of nearly 400 pages. They were bolstered by many others pointing to the guilt of appellant. For instance, the knife used by the defendant was traced to the man to whom he gave it the very night of the affray, when the officers arrived; two witnesses told about the defendant's relating to them the attack he had made and his statement that he was afraid his victim would die; a woman with whom he was friendly recounted how she had washed blood from his shirt shortly after the crime was committed.

The last question contains the challenge to the Court's order denying a motion by appellant for a subpoena duces tecum directing the State Attorney and his assistant, the Court reporter and his deputies, to produce stenographic notes and transcriptions of testimony given by various witnesses at sundry places in Hillsborough County while the death of Dan Williams was being investigated. It seems to us that no discussion of the merits of this motion or the propriety of the order on it are necessary in view of our ruling in McAden v. State, 21 So. (2nd) 33, a decision which is decisive of this phase of the controversy.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.